**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 07-cv-01146-CMA-BNB

JAMES RIVER INSURANCE COMPANY, an Ohio corporation,

     Plaintiff,

v.

RAPID FUNDING, LLC, a Colorado Limited Liability Company,

     Defendant.

---

## ORDER REGARDING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

---

Before the Court is Plaintiff James River Insurance Company's ("James River") Motion for Summary Judgment on Defendant's Breach of Contract and Good Faith and Fair Dealing ("GFFD") Claims (Doc. # 70), Motion for Summary Judgment On Defendant's Colorado Consumer Protection Act Claim ("CCPA") (Doc. # 71) and Motion to Dismiss Defendant's Second Amended Counterclaim Pursuant to Colorado General Assembly House Bill 1407 (Doc. # 112). For the following reasons, the Motion for Summary Judgment on the Contract and GFFD claims (Doc. # 70) is DENIED, the Motion for Summary Judgment on the CCPA claim (Doc. # 71) is GRANTED and the Motion to Dismiss (Doc. # 112) is GRANTED.

## <u>FACTS</u>

This is an insurance coverage dispute. The parties agree on many of the relevant facts, which the Court will briefly recap. James River is an excess and surplus

insurer.  Among other things, James River insures vacant buildings.  It operates under the motto, "an unrelenting focus on underwriting profit."  Defendant Rapid Funding, LLC ("Rapid Funding") provides loans to property developers and owners.  Rapid Funding occasionally ends up owning the properties for which it has provided funding.

Rapid Funding used Lockton-Chicago, a subsidiary of one of the largest insurance brokers in the world, to procure insurance for some of its properties.  With Lockton-Chicago acting as broker, Rapid Funding took out Commercial Property Policy, No. 00019308 (the "Policy") from James River on October 12, 2006.  Rapid Funding had previously used James River for general liability insurance, but the parties had no direct communication with each other regarding the Policy until they signed the insurance contract.  Rapid Funding did not research James River prior to buying the Policy, but apparently liked James River's terms because it accepted the Policy less than an hour and a half after receiving James River's quote.  The Policy lasted six months, cost Rapid Funding $32,500 and covered seven different properties in multiple states.

One of the properties covered under the Policy was an apartment complex in Wyoming, Michigan, the 38-year-old Amsterdam Gardens ("the Gardens").  The Gardens consisted of two vacant apartment buildings and a clubhouse, all which the city of Wyoming had condemned and forcibly evacuated in 2003.  Rapid Funding did not own the Gardens when it took out the Policy, but it purchased the apartment complex

two weeks later at a foreclosure sale on October 25, 2006.[1]  Under the Policy, Rapid Funding could recover up to $3 million for a loss to the Gardens.

Three months later, on January 24, 2007, a fire completely destroyed the North Building at Amsterdam Gardens.  James River began investigating the fire and, for reasons that are not clear, cancelled the Policy one week after the fire.  The investigation continued and James River sent Rapid Funding two separate reservation of rights letters.  On March 23, 2007, Rapid Funding submitted its first "Statement in Support of Proof of Loss" under the Policy, in which it contended that it was entitled to policy limits.  James River rejected the first Proof of Loss because it did not contain certain technical details, but allowed Rapid Funding to submit an amended Statement, which it did on May 3, 2007.  James River accepted Rapid Funding's second Statement in Support of Proof of Loss, but denied Rapid Funding's request for policy limits on the merits of the claim.

The parties agree that the fire – suspected arson – was a covered loss under the Policy.  They also agree that the fire rendered the North Building completely worthless.  However, the genesis of this lawsuit is a vigorous dispute regarding the pre-fire value of the North Building, which would determine the amount, if any, James River owes Rapid Funding under the Policy.

_____

[1]  Thus, the policy period pre-dated Rapid Funding's ownership of the Amsterdam Gardens.

Although James River insured the building for up to $3 million under the Policy only a couple of months before it burned, James River claims the North Building was worthless before the fire. James River's valuation rests on the opinion of an appraiser it hired immediately after the fire, John A. Meyer. Mr. Meyer, a residential appraiser by training and trade, concluded that the North Building had a negative (*i.e.*, less than zero) pre-fire value because it was older, condemned and uninhabitable. This valuation theory leads James River to conclude that it owes Rapid Funding nothing more than the $200,000 it has already paid under the terms of the Policy for demolition and fire department charges.

Rapid Funding contends the North Building was worth $4,489,731, which, Rapid Funding argues, entitles it to policy limits. Rapid Funding relies primarily on the opinion of its owner, Andrew Miller, who performed his own calculations to arrive at the much higher pre-fire value.[2] Mr. Miller reached this valuation, which Rapid Funding calls the "actual cash value," by calculating the replacement value of the North Building, $7,145,093, and subtracting 40 percent for depreciation, which results in the $4,489,731 number. Mr. Miller reaches his opinion despite the fact that Rapid Funding had paid only $1.8 million for the entire Amsterdam Gardens complex, which included three buildings and almost ten acres of land.

---

[2]  Given that the Court previously granted James River's *Daubert* Motion, the Court provides a description of Mr. Miller's proposed testimony for informational purposes only.

Thrown into this valuation mix was a third-party buyer Rapid Funding had lined up. The buyer was apparently willing to purchase the entire Amsterdam Gardens complex for $1.8 million and the sale was pending at the time of the fire. The sale fell through after the fire and Rapid Funding donated the property to a local school. Although both parties attempt to use the existence of this third-party offer to bolster their respective positions, neither party claims that $1.8 million constitutes a reasonable pre-fire value of the North Building.

## PROCEDURAL BACKGROUND

In the contretemps that ensued after the fire, James River continued to maintain the pre-fire value was zero and Rapid Funding stood by its policy limits argument. In May 2007, James River won the race to the courthouse by filing a declaratory judgment complaint (Doc. # 1). James River sought a declaration that the North Building had a value of zero or less than zero prior to the fire and that its liability under the Policy was limited accordingly. Rapid Funding contested James River's allegations and responded with three counterclaims for breach of contract, breach of good faith and fair dealing ("GFFD") and violation of the Colorado Consumer Protection Act ("CCPA") (Doc. # 5). James River amended its Complaint twice (Doc. ## 15 & 22) and Rapid Funding responded with an Answers and counterclaims (Doc. ## 19 & 24). Discovery did little to change the parties' respective positions.

On September 12, 2008, James River filed two Motions for Summary Judgment.[3] The first-filed Motion requests summary judgment on Rapid Funding's breach of contract and GFFD counterclaims contained in Answer to the Amended Complaint. The second-filed Motion seeks summary judgment on the CCPA counterclaim. Along with the Motions for Summary Judgment, James River filed a motion to exclude all testimony of Rapid Funding's valuation expert based on *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579 (1993) and its progeny (Doc. # 72). The Court has addressed the latter Motion in a separate order (Doc. # 126).

The Motions for Summary Judgment did not stifle the parties' legal wrangling. After the parties completed briefing on the Motions for Summary Judgment and *Daubert* Motion, Rapid Funding amended its counterclaims to include a request for statutory and exemplary damages pursuant to the newly adopted House Bill 1407 (Doc. # 103). In the Second Amended Counterclaim, Rapid Funding seeks to state a claim under the new statute's double damages provision. James River moved to dismiss the Amended Counterclaim (Doc. # 112). With all of this in mind, the Court now turns to an analysis of James River's Motions for Summary Judgment and Motion to Dismiss.

---

[3] The Court's practice standards in place at the time James River filed its summary judgment motions allowed only one motion for summary judgment, as Rapid Funding pointed out in its response brief. However, James River moved for and received leave to file the separate briefs (Doc. # 107).

<u>**ANALYSIS**</u>

**I.  STANDARD OF REVIEW ON MOTIONS FOR SUMMARY JUDGMENT**

This Court may grant summary judgment if "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact . . . ."  Fed. R. Civ. P. 56(c); *see*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The movant bears the initial

burden to show an absence of evidence that would support the non-movant's case.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant meets this

burden, the responding party must come forward with evidence to demonstrate a

genuine issue for trial.  *Id.*  A fact is material only if it "might affect the outcome of the

suit under governing law . . . ."  *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531

(10th Cir. 1998).  On a motion for summary judgment, the Court will view the record in

a light favorable to the non-movant.  *Concrete Works, Inc. v. City & County of Denver*,

36 F.3d 1513, 1518 (10th Cir. 1994).

**II.  MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT AND
BAD FAITH CLAIMS**

James River's first-filed Motion for Summary Judgment seeks summary judgment

on Rapid Funding's counterclaims for breach of contract and bad faith breach of

insurance contract.

In its breach of contract claim, Rapid Funding alleges that James River breached

the Policy by refusing to pay for the loss of the North Building at the Amsterdam

Gardens.  The GFFD counterclaim is based on similar facts with additional allegations

of bad-faith by James River in handling investigation into the claim.  James River

argues that the sole issue to be resolved regarding the breach of contract counterclaim

is the pre-fire value of the North Building.  James River further argues that Rapid

Funding's GFFD counterclaim dovetails into the breach of contract claim, and, since

Rapid Funding cannot point to a breach of the insurance contract, the GFFD

counterclaim must also fail.  Even if the Court accepts James River's narrow view

of the case as true, material questions of fact on the valuation issue preclude summary

judgment.

As noted above, the parties vehemently dispute the pre-fire value of the North

Building.  James River contends that upon favorable resolution of its *Daubert* motion,

it has uncontested evidence that the pre-fire value of the building was zero or less than

zero.  However, although the Court granted James River's *Daubert* motion (*see* Doc.

# 126), the extreme position taken by James River – that the North Building was

absolutely worthless – raises factual questions regarding the reasonableness of James

River's handling of Rapid Funding's claim and whether the North Building had any pre-

fire value, *i.e.*, value greater than zero.  Again, these questions are for a jury to decide.

*See Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. Ct. App. 2008)

("insurer's bad faith is ordinarily a question of fact to be determined by a jury") (citing

*Rine v. Isham*, 382 P.2d 535, 537 (Colo. 1963)).

Accordingly, because questions of material fact remain outstanding, the Court denies James River's Motion for Summary Judgment on the breach of contract and GFFD counterclaims. However, the CCPA claim is a different matter.

## III.    MOTION FOR SUMMARY JUDGMENT ON THE CCPA CLAIM

James River's second-filed motion for summary judgment requests summary judgment on Rapid Funding's CCPA counterclaim. James River argues that Rapid Funding cannot establish two elements of its claim. First, it argues that Rapid Funding cannot prove James River's allegedly deceptive trade practices significantly impacted the public as actual or potential consumers of James River's services. Second, it argues that Rapid Funding cannot prove James River made a false representation as to the characteristics of the insurance contract at issue. However, the Court need only address the first argument to grant summary judgment because it is without question that, even if deceptive, James River's representations at issue in this case did not cause significant public impact.

### A.    The Colorado Consumer Protection Act

The CCPA is intended to protect consumers from predatory, deceptive trade practices. *See Crowe v. Tull*, 126 P.3d 196, 201-02 (Colo. 2006); *People ex rel. Dunbar v. Gym of Am., Inc.*, 493 P.2d 660, 667 (Colo. 1972); *People ex rel. MacFarlane v. Alpert Corp.*, 660 P.2d 1295, 1297 (Colo. Ct. App. 1982). "The CCPA deters and punishes businesses which commit deceptive practices in their *dealings with the public* by providing prompt, economical, and readily available remedies against consumer

fraud." *Rhino Linings USA, Inc. v. Rocky Mtn. Rhino Lining, Inc.*, 62 P.3d 142, 146

(Colo. 2003) (emphasis added).

A claimant must establish five elements to recover under the CCPA:

(1)     the defendant engaged in an unfair or deceptive trade practice;
(2)     the challenged practice occurred in the course of defendant's business;
(3)     the challenged practice significantly impacts the public as actual or
        potential consumers of the defendant's goods, services or property;
(4)     the plaintiff suffered injury in fact to a legally protected interest; and
(5)     the challenged practice caused claimant's injury.

*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998); *Martinez v. Lewis*, 969 P.2d 213, 221

(Colo. 1998).

Given the legislative intent, a CCPA claim is not identical to a breach of contract

claim. *See NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1136 (D. Colo. 2007)

(Ebel, J). As the above-listed elements make clear, the CCPA requires a claimant to

prove a public impact element not present in breach of contract or common law fraud.

*Id.* (noting that, unlike breach of contract or common law fraud, the CCPA does not

apply to a purely private transaction); *Rhino Linings*, 52 P.3d at 148-49; *Vista Resorts,*

*Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 76 (Colo. 2004) (noting that public

impact is an "additional element, not required to prove common law fraud"). The CCPA

protects the public in situations when consumers cannot obtain information regarding

a potential transaction unless the information comes from the person on the other side

of the transaction. *Martinez*, 969 P.2d at 222. The public impact requirement is not

intended to leave aggrieved plaintiffs without a remedy, but to maintain the distinction

between breach of contract and fraud claims, on one hand, and consumer protection

claims, on the other hand.  *Rhino Linings*, 62 P.3d at 149; *Vista Resorts*, 117 P.3d

at 76.  Whether the challenged trade practice "significantly impacts the public," is

determined using three factors:  (1) the number of consumers directly affected by

the challenged practice; (2) the relative sophistication and bargaining power of the

consumers affected by the challenged practice; and (3) evidence that the challenged

practice has previously impacted other consumers or has the significant potential to

do so in the future.  *Rhino Linings*, 62 P.3d at 149 (citing *Martinez*, 969 P.2d at 222).

If there is no question of fact regarding a claimant's failure to prove public impact,

summary judgment is appropriate.  *See Martinez*, 969 P.2d at 222-23 (affirming

summary judgment for defendant when plaintiff failed to show public impact).

### B.  Rapid Funding Cannot Show Significant Public Impact

Under the facts of this case, and with the appropriate standard of review in mind,

the Court finds that Rapid Funding cannot establish a question of material fact regarding

the significant public impact of James River's alleged misrepresentations.

### 1.  The Number Of Consumers Directly Affected By The Alleged Deceptive Trade Practice Is Minimal

The first public impact factor – the number of consumers directly affected by the

challenged practice – weighs heavily in favor of summary judgment.  Indeed, on the

basis of undisputed facts here, the Court finds only one "person" affected by James

River's trade practices in this case:  Rapid Funding.  The representations at issue relate

to "the characteristics of the insurance contract at the time the contract was entered by

representing to Rapid Funding and others that the [Amsterdam Gardens] would be

covered for losses in the event of a fire . . . ."  (Doc. # 103, at 16, ¶ 65.)  Thus, Rapid

Funding admits that the representations upon which it bases its CCPA claim relate to

a unique contract with just one consumer.  Moreover, the critical representations in

this case, and the only ones that Rapid Funding might prove misleading, are James

River's contractual commitment that it would provide up to $3 million in coverage for

the Amsterdam Gardens and that Rapid Funding could choose to make a claim for

actual cash value of the loss without having to rebuild the North Building.  However,

as Rapid Funding's own pleading and response brief admit, James River made these

representations only to Rapid Funding in the context of quoting and underwriting Policy

No. 00019308; *i.e.*, no other consumers received these particular representations.

Such "trade practices," if they can be labeled as such, are limited in impact.  The fact

that James River markets itself to other consumers and uses common ISO forms and

underwriting practices does not convert James River's private contractual promises to

Rapid Funding into the type of public representations having the necessary impact for

liability under the CCPA.

In other words, the insurance policy at issue is a private contract between the

parties and not the type of widespread transaction that affected (or could affect) the

public as a whole.  If Rapid Funding's theory were true, every private contract made by

a company that advertises to the public would be susceptible to liability under the

CCPA.  This is obviously not the intent of Colorado law, as *Rhino Linings*, *Martinez,* and

other similar cases involving only private transactions make clear.  *See, e.g., Morris*,

12

192 P.3d at 528-29 (no significant public impact when insurer's challenged conduct directed only towards insured); *Coors v. Security Life of Denver Ins. Co.*, 91 P.3d 393 (Colo. Ct. App. 2003) *aff'd in relevant part* (112 P.3d 59) (2005) (misrepresentation affecting insurance policy not significant public impact).

> **2.** <u>The Parties Have Relatively Equal Sophistication and Bargaining Power</u>

The second public impact factor is the relative sophistication and bargaining power of the parties. *See Martinez*, 969 P.2d at 222.

Here, Rapid Funding relied on an insurance broker, Lockton-Chicago, to procure the Policy. Obviously, this leveled the playing field somewhat between the parties and certainly added a source from which Rapid Funding could obtain information about James River and the Policy terms.

Even if Rapid Funding had not relied on a broker, the undisputed facts demonstrate that Rapid Funding, although staffed by only three people, is a relatively sophisticated and experienced operation. One of Rapid Funding's principals, Andrew Miller, is a certified public accountant with significant experience in commercial real estate transactions. He has previously sought and purchased insurance for properties like the one at issue in this case.[4] Moreover, Rapid Funding's other principal, Douglas Pluss, is a lawyer and member of the Colorado Bar. These facts lead the Court to

---

[4] Indeed, in opposing James River's *Daubert* Motion, Rapid Funding argues that Andrew Miller, one of Rapid Funding's owners and principals has decades of relevant experience and should be qualified as an expert in the valuation of the pre-fire value of the Amsterdam Gardens (Doc. # 76).

conclude that a company like Rapid Funding, which used an expert insurance broker and which is staffed by experienced businesspeople, including a CPA and licensed attorney, had relatively high levels of sophistication in negotiating this transaction. Also, it is undisputed that James River had at least one competitor for Rapid Funding's business. In short, unlike typical consumer transactions the CCPA was designed to protect, Rapid Funding was not completely beholden to James River for truthful information regarding the Policy. Thus, this factor supports the argument that Rapid Funding cannot show significant public impact.

      3.      <u>Rapid Funding Has No Evidence That The Challenged Practice Has Affected Or Will Affect Other Consumers</u>

The final factor to consider in deciding whether there is a significant public impact is whether "the challenged practice previously has impacted other consumers or has significant potential to do so in the future." *Martinez*, 969 P.2d at 222.

This factor again supports summary judgment. Rapid Funding has not come forward with any evidence to support the idea that James River's representations regarding the Policy have previously affected other consumers or have the potential to do so in the future. The paucity of evidence on this factor is obviously a result of the private nature of the transaction. Aside from itself, Rapid Funding cannot identify previous or future consumers who were parties to Policy No. 00019308 or impacted by the representations contained therein. Thus, there is no evidence that any previous or future consumers have been or could be affected by James River's representations regarding the Policy.

James River has shown that there is no question of material fact on the public impact element of Rapid Funding's CCPA counterclaim. Accordingly, judgment as a matter of law in its favor is appropriate and the Motion for Summary Judgment is granted.

## IV.     STANDARD OF REVIEW ON MOTION TO DISMISS

Under Federal Rule 8(a)(2), a claimant must provide a short, plain statement of the facts sufficient to put the respondent on notice of the claim. *See* Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"). A motion to dismiss under Federal Rule 12(b)(6) tests whether the claimant has complied with Rule 8(a)(2).

Courts review Rule 12(b)(6) motions with deference to the non-movant and accept well-plead factual allegations in the pleading as true. *See Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). To withstand a motion to dismiss, the claimant must plead facts with enough detail to state a claim to relief that is plausible on its face. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Put another way, the claimant must provide enough facts to move the claim for relief beyond the speculative level, or the claim will be dismissed. *See Robbins*, 519 F.3d at 1247.

The Court concludes that Rapid Funding's Second Amended Counterclaim does not meet this standard and should be dismissed.

**V.    THE MOTION TO DISMISS THE SECOND AMENDED COUNTERCLAIM**

The basis for Rapid Funding's Second Amended Counterclaim is House Bill 1407, which became effective in August 2008, more than 18 months **after** fire destroyed the North Building and one year **after** James River filed this lawsuit.  The bill was implemented pursuant to C.R.S. § 10-3-1116, entitled "Remedies for unreasonable delay or denial of benefits" by an insurer.  Section 10-3-1116(1) contains a provision that entitles an insured to bring an action against an insurer for "two times the covered benefit," if the insurer has unreasonably denied or delayed payment of a claim for benefits.  C.R.S. §§  10-3-1116(1).

Section  10-3-1116 does not contain any provisions indicating that the legislature meant it to be applied retroactively.  James River seeks dismissal of the Second Amended Counterclaim on the basis that the claim should not, as a matter of law, apply in this case because C.R.S. § 10-3-1116(1) was not passed by the legislature until well after the operative events in this lawsuit took place.

**A.    Legislation Is Presumed to Apply Prospectively, not Retroactively**

Neither Colorado nor Federal statutes may be applied retroactively unless the legislature has provided clear indication to the contrary.  *See* C.R.S. § 2-4-202 ("A statute is presumed to be prospective in its operation."); *City of Colorado Springs v. Powell*, 156 P.3d 461, 464 (Colo. 2007) ("Absent legislative intent to the contrary, we presume a statute operates prospectively."); *United States v. Husted*, 545 F.3d 1240, 1246 (10th Cir. 2008) ("Supreme Court case law, as well as ours, clarifies that

16

'[a] statute may not be applied retroactively . . . absent a clear indication from Congress that it intended such a result.'") (alterations in original) (quoting *INS v. St. Cyr*, 533 U.S. 289, 316 (2001)).

In this case, C.R.S. § 10-3-1116 lacks any explicit indication from the Colorado legislature that its provisions should apply retroactively. Neither party disputes the date of the fire that destroyed the North Building, January 24, 2007. Further, neither party disputes that James River rejected Rapid Funding's first Proof of Loss in March 2007 and its second Proof of Loss in May 2007, all well before C.R.S. § 10-3-1116 became effective. With no way around these dates, Rapid Funding concedes as much in its Response Brief (Doc. # 119, at 1). Thus, the provisions of § 10-3-1116 do not apply retroactively to events that occurred prior to its effective date of August 5, 2008. Rapid Funding cannot bootstrap these events onto the double damages provision to take advantage of that statute.

**B.     The Second Amended Counterclaim Accrued Before House Bill 1407 Was Adopted By The Colorado Legislature**

Rapid Funding attempts to get around the retroactive application problem by arguing that its Second Amended Counterclaim actually applies to new acts of unreasonable delay by James River that took place after the adoption of C.R.S. § 10-3-1116(1). Rapid Funding contends that James River's continued denial of Rapid Funding's claim after August 6, 2008, results in new and additional conduct, which triggers the prospective application of C.R.S. § 10-3-1116(1). Specifically, Rapid Funding argues that James River learned of new information via discovery in this

17

lawsuit and that James River's refusal to reverse its position constitutes the basis for a **new** breach that **is** subject to C.R.S. § 10-3-1116(1).  However, Rapid Funding's position runs contrary to well-established case law and common sense.

Courts applying Colorado law have held that an insurer's continuing pattern of unreasonable behavior may be relevant evidence of a bad faith claim.  *See Dale v. Guaranty Nat. Ins. Co.*, 948 P.2d 545, 552 & n.10.  But, these same courts recognize that an insurer's continued refusal to cooperate with an insured cannot serve as the basis for a separate bad faith claim if one has already been plead.  *See, e.g., Southwest Nurseries, LLC v. Florists Mut. Ins., Inc.*, 266 F. Supp. 2d 1253, 1256-57 (D. Colo. 2003) ("Bad faith breach of an insurance contract encompasses the **entire course of conduct and is cumulative** . . . .") (emphasis added) (citations omitted); *Dale v. Guaranty Nat. Ins. Co.*, 948 P.2d at 552 ("the tort of bad faith breach of insurance contract encompasses an entire course of conduct").  These cases make clear that an insurer's ongoing conduct, if it can be traced back to the same injury to the insured, although relevant to a claim for breach of GFFD, does not result in additional claims.

In the instant case, Rapid Funding argues that James River's failure to act on each new piece of information unearthed by discovery in this case leads to the accrual of a new breach of the GFFD claim.  This argument ignores the case law cited above, as well as well-established rules against double recovery.  Rapid Funding does not allege any new injury or damages resulting from James River's behavior after August 6, 2008.  Rather, Rapid Funding's entire claim stems back to James River's 2007 failure to

pay for the loss of the North Building. Additionally, Rapid Funding has not pointed to any new breach of contract by James River after August 6, 2008 (*i.e.*, an additional claim for benefits that James River has unreasonably delayed). Again, Rapid Funding's claim traces back to events prior to August 6, 2008. Thus, Rapid Funding's position defies well settled legal rules against double recovery because Rapid Funding seeks multiple payments from the same legal theory even though it has alleged only one, distinct injury caused by one breach of James River's duty to act in good faith.

Rapid Funding's position, if adopted, would also lead to a logistical nightmare. Indeed, if the Court accepted Rapid Funding's argument and held that each new fact brought out during discovery created the basis for a new and separate breach of a GFFD claim, a pleading and docketing quagmire would ensue as the parties constantly amended their pleadings in response to new depositions and discovery responses. The end result would be dozens of bad faith claims in this lawsuit all relating to the initial loss and denial of benefits. This Court is not going to open the door to this pandora's box.

Therefore, because House Bill 1407 and C.R.S. § 10-3-1116(1) do not apply retroactively and because continuing conduct by James River after August 6, 2008, do not form the basis for an entirely new bad faith claim, Rapid Funding's Second Amended Counterclaim fails to state a claim for relief that is plausible on its face. As such, the Court grants James River's Motion to Dismiss.

## CONCLUSION

Questions of material fact regarding the value of the North Building and James River's handling of the Rapid Funding's claim remain for the jury. Thus, summary judgment on the breach of contract and GFFD counterclaims is inappropriate at this time. In contrast, James River has shown that no evidence exists to support a critical element of Rapid Funding's CCPA counterclaim: significant public impact. Therefore, summary judgment on this claim is appropriate as a matter of law.[5] Regarding the Motion to Dismiss the Second Amended Counterclaim, Rapid Funding has not pleaded facts sufficient to raise a plausible claim for relief. Thus, this claim will be dismissed pursuant to Federal Rule 12(b)(6).

Accordingly,

James River's Motion for Summary Judgment on Defendant's Breach of Contract and Good Faith and Fair Dealing Claims (Doc. # 70) is DENIED;

James River's Motion for Summary Judgment on Defendant's Colorado Consumer Protection Act Claim (Doc. # 71) is GRANTED and Rapid Funding's CCPA counterclaim is hereby DISMISSED WITH PREJUDICE; and

James River's Motion to Dismiss Defendant's Second Amended Counterclaim Pursuant to Colorado General Assembly House Bill 1407 (Doc. # 112) is GRANTED

---

[5] Rapid Funding's failure to meet its burden on this element negates the need for the Court to address James River's alternative argument regarding a false representation under the CCPA.

and Rapid Funding's Second Amended Counterclaim is hereby DISMISSED WITH

PREJUDICE.

DATED: March __2__, 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge