IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 07-cv-01146-CMA-BNB

JAMES RIVER INSURANCE COMPANY, an Ohio corporation,

   Plaintiff,

v.

RAPID FUNDING, LLC, a Colorado limited liability company,

   Defendant.

## ORDER GRANTING MOTION FOR RECUSAL

This matter is before the Court on the April 11, 2012 Motion to Recuse,[1] filed by Rapid Funding, LLC ("Rapid Funding").[2]  (Doc. # 301.)  For the following reasons, the Court grants the motion.

### I. BACKGROUND

This case was assigned to Judge Arguello on October 22, 2008, when she took her seat on the Court.  (Doc. # 93.)  On April 12, 2010, following a jury verdict in favor of Rapid Funding, James River initiated an appeal and had Andrew M. Low, an attorney at the law firm of Davis Graham & Stubbs, LLP ("DGS"), enter an appearance on its

---

[1] The motion is actually titled "Rapid Funding LLC's Response to Minute Order Concerning Recusal (Doc. No. 298)."  However, because the motion seeks the Court's recusal, it can properly be referred to as the Motion to Recuse.

[2] For reasons well-known to the parties, the usual designations of "plaintiff" and "defendant" are not particularly useful in this case.  As such, the Court will refer to the parties by name.

behalf.[3]  (*See* Doc. # 256.)  The Tenth Circuit reversed the jury's damages verdict and remanded the case for a new trial on damages.  (Doc. # 280.)  Its mandate issued on September 6, 2011.  (Doc. # 281.)

Because DGS continued to represent James River after the appeal, the Court issued the following notice of disclosure on September 14, 2011:

> Judge Arguello was a partner of Davis Graham & Stubbs LLP from 10/11/2004 through 04/10/2006, during which time Mr. Lowe [*sic*] was also a partner of DGS.  Judge Arguello's normal procedure is to recuse herself from any case in which DGS enters an appearance.  However, because of the Court's familiarity with the facts and issues in this case, it would appear to be more efficient for her to continue to oversee it now.  However, any party wishing to suggest recusal of Judge Arguello may do so within 14 days from the date of this Notice.

(Doc. # 285.)  No party moved for recusal during the fourteen days specified by the Court.

At an October 4, 2011 status conference, two DGS attorneys, including Thomas P. Johnson, entered appearances and joined Mr. Low in representing James River. (*See* Doc. ## 288 and 289.)  Contrary to Rapid Funding's assertion in the instant motion (Doc. # 301 at 2), the Court provided an additional disclosure as to Mr. Johnson, stating:

> I did file a notice of disclosure.  You all do understand that I was former partners with Mr. Johnson and Mr. Low, and I gave you all an opportunity to recuse me if you thought that was necessary.  I just want to make sure that that wasn't overlooked, and we have it on the record that you still request that I proceed with this if we need to go back to trial again, and Davis Graham & Stubbs is the law firm representing James River in this case.

---

[3] DGS had not been involved previously in the litigation.

(Doc. # 291 at 10.)  Counsel for Rapid Funding responded:

> Your Honor, we are aware of your disclosure, and we have no objection to your hearing the case.  We have confidence in you being impartial.  And, on the record, I want to say that absolutely we appreciate the disclosure, but we have no objection, and we want to move forward with Your Honor.

(*Id.* at 10-11.)

For many weeks following the October 4, 2011 status conference, the parties briefed several issues associated with the scope of the retrial in light of the Tenth Circuit's opinion.  (*See* Doc. ## 292; 293; 294.)  On April 5, 2012, the Court held a hearing on these issues.  (Doc. # 298.)  After substantial argument from counsel, and immediately before the Court was going to rule on the matters at issue, the following exchange occurred between the Court and Counsel for Rapid Funding:

> COUNSEL FOR RAPID FUNDING:  We have had numerous meetings with counsel from your former firm.  And when we sit down and talk to them, they keep calling you by your first name.  And when you did your disclosure as to what the relationship was, we understood that you have been a partner in this firm, and that was it.  And we waived the disclosure.  And we talked to our client, and he said he believed you would be fair.  And we still believe you will be fair.
>
> But it is – we have had to report back to our client that when they refer to you, they continue – Mr. Johnson, and I asked him not to do that, to refer to you as Judge Arguello.  And I just want to bring it up, not because we are going – not because we are going to say we are going to pull our agreement to have you sit here.  It is troublesome to me.
>
> THE COURT:  Well, I did disclose.  I was a partner with Davis Graham & Stubbs.  And Mr. Johnson and Mr. Low were my partners.  [. . .] That was 2004-2006, I believe it was.  So I can understand – they've never addressed me as Christine, by my first name, when I was in a judge context.  But, I was their partner, and I disclosed that for more than two years.  So, I guess before I invest any more in this case – I've spent a lot

3

of time – if that is an issue for you . . . I am perfectly willing to recuse myself. But I will not go forward and make a ruling, then have you become upset and use that as a basis to have me recuse myself. So if you want me to recuse myself, I am more than happy to do so, despite the fact that you told me several months back that you didn't need me to recuse. So if your client is that concerned, then I think we need to face that issue now.

   COUNSEL FOR RAPID FUNDING: Well, let me bring it totally to the point here; is that my understanding is that you were their partner. But my understanding was that you didn't work directly with any of them.

   THE COURT: Oh, no. I was in the litigation section. Mr. Johnson was the head of our litigation section. Now, I was a partner, so I don't think I ever worked a case with Mr. Johnson. But he was the head of the litigation section. I was in charge of all of my own cases, but we did consult. Mr. Low and I consulted on cases that might be going up on appeal.

   [. . .]

   THE COURT: And I don't think Mr. Johnson ever oversaw anything I did, because they were my cases, . . . he never supervised me. But he was the head of our litigation section. So they are going to know me as Christine, no question about it, because I was their partner.

   [. . .]

   THE COURT: So at this point, I'm willing to allow you, even though we are now months into this case – I made the appropriate disclosure. I don't think I hid anything. I don't think Mr. Johnson or Mr. Low hid anything. But I am willing to let you, if you want me to recuse myself, I will. If that is bothersome to your client –

   COUNSEL FOR RAPID FUNDING: I need to talk to my client. I can't make that decision now. I have indicated to my client the conversations we had where they refer to you by the first name.

   [. . .]

> THE COURT: All right. So how much time do you need to get back to me? I mean, I wish you would have brought this up before we spent two hours going through – or an hour – I guess an hour and some going through this.
>
> COUNSEL FOR RAPID FUNDING: I apologize, because to me the only reason I brought it up is that I would hope they would refer to you as Judge Arguello. And I mentioned it to my client, and I need to discuss it with him. I can't make that decision for him. I know he was concerned enough that he wanted me to bring it up to you, period.
>
> THE COURT: All right.

(Doc. # 300 at 59-63.)

Counsel for DGS vehemently objected to the Court recusing, and stated:

> I think that what opposing counsel has just done is transparent. They waited until the end of the hearing to see the gist of the Court's comments about the motion, and then when the comments were somewhat negative to their position, then, and only then, did they ask you or did they raise this alleged concern about some, you know, exceedingly close or too close relationship.
> This is judge shopping, Your Honor. This absolutely should not be permitted. You can't get into the case, see which way the wind is blowing, see which way the judge is leaning, and then holding this secret card in your pocket, and then once you know which way the judge is leaning, then you say, ah-hah, I have a wild card, and now I will put it out of my pocket, and I will ask the judge to recuse herself because she offered to do it before, and only after I know which way the hearing is coming out.

(*Id.* at 63-64.)

The Court reserved ruling and ordered briefing on the recusal issue. (*Id.* at 65.) As mentioned previously, Rapid Funding moved for recusal on April 11, 2012. (Doc. # 301.) Attached to its motion is a letter from Andrew Miller, Rapid Funding's Manager, requesting recusal. (Doc. # 301-3.) James River responded on April 18, 2012. (Doc. # 302.)

5

## II. DISCUSSION

Under 28 U.S.C. § 455(a), "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." However, the section further provides that "waiver [from the parties] may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e).

The goal of § 455(a) is "to avoid even the appearance of partiality" and thereby "promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (quotation marks and citation omitted). Thus, the "appearance of impartiality is virtually as important as the fact of impartiality." *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358, 1361 (10th Cir. 1977).

In deciding a motion for recusal, the central question is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (quotation marks and citations omitted). This "totality of the circumstances" approach is reflected in Supreme Court opinions, *see, e.g.*, *Sao Paulo State of Federative Republic of Brazil v. American Tobacco Co., Inc.*, 535 U.S. 229, 233 (2002), and has been articulated by the Tenth Circuit as a requirement to consider the issue "in the light of the total facts and viewing the future of [the] case," *United States v. Ritter*, 540 F.2d 459, 464 (10th Cir. 1976).

In the instant case, the concerns raised by counsel for Rapid Funding at the April 5, 2012 hearing focused primarily on DGS counsel's use of Judge Arguello's first name.

However, the Motion to Recuse and accompanying letter expand the basis for recusal to Mr. Johnson's position at DGS when Judge Arguello was a partner there.  (*See* Doc. ## 301 at 5 and 301-3 at 2-3.)  Mr. Miller states, "Had I known this fact [of Mr. Johnson's position of seniority at DGS] at the time that I needed to make the decision about whether to request that Your Honor adhere to your normal policy of recusing yourself from cases in which Davis Graham & Stubbs LLP is involved, I would have requested that Your Honor adhere to that policy."  (Doc. # 301-3 at 3.)  Mr. Johnson, although head of the litigation section, had no more authority or seniority over the undersigned than any other partner at the firm, including Mr. Low.  Thus, the Court does not believe that it is reasonable to describe Mr. Johnson's role as head of the litigation section at DGS as a "relevant fact" or as necessary to an understanding of "the total facts" which, absent disclosure, could raise doubts about the Court's impartiality.

The Court has taken into consideration James River's arguments and extensive citations to cases, which prohibit the use of § 455(a) as a veto over judges or a mechanism by which judge shopping can be pursued.  (*See id.* at 5-6.)  The Court agrees that the timing of Rapid Funding's recusal request – at the conclusion of the Court's questioning of counsel at the April 5, 2012 hearing – is suspect and borders on improper sandbagging of both opposing counsel and this Court.  On the other hand, however, granting Rapid Funding's late recusal request, while somewhat distasteful given its questionable timing, produces little overall prejudice, with the scope-of-trial

issues fully briefed and the transcript of the April 5, 2012 hearing available to the judge to whom this case will be reassigned.[4]

Because the appearance of impartiality is virtually as important as the fact of impartiality, the Court will do now what it should have done when the case was remanded and DGS remained as counsel for James River – *i.e.*, follow its instincts and recuse from presiding further over this case.

### III. CONCLUSION

For the foregoing reasons, the undersigned believes she should recuse herself. It is, therefore,

ORDERED that Rapid Funding's April 11, 2012 Motion to Recuse (Doc. # 301) is GRANTED, and the judge's file be returned to the clerk to reassign this case by random draw. It is

FURTHER ORDERED that the Final Trial Preparation Conference, set for May 4, 2012, and the five-day jury trial, set to commence May 21, 2012, are VACATED.

DATED:  April __26__, 2012

BY THE COURT:

*Christine M Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[4] In fact, it appears that the biggest loss of time pertains to the Court, which spent numerous hours reviewing the parties' briefs and preparing for the hearing on the scope of the re-trial.