IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 07-cv-1146-RBJ-BNB

JAMES RIVER INSURANCE COMPANY,

    Plaintiff.

v.

RAPID FUNDING LLC,

    Defendant.

# ORDER

This matter is before the Court on James River Insurance Company's ("James River") Motion in Limine to Limit the Scope of Retrial [Doc. #294]. Rapid Funding filed a brief in opposition [#294] and James River filed a reply [#294]. On April 5, 2012 Judge Christine Arguello held a hearing on the motion [#300]. Shortly thereafter, however, Judge Arguello disqualified herself from further participation in the case based upon her former association with the law firm that had become plaintiff's counsel. The matter is ripe for review.

## PROCEDURAL HISTORY

This dispute arises out of a fire that destroyed part of an apartment building located in Wyoming, Michigan. The apartment complex, Amsterdam Gardens, consisted of two buildings: the North Building and the South Building. In 2003, the City of Wyoming condemned Amsterdam Gardens for building code violations. In 2004, Robert Rice and Robert Niebauer paid $2.6 million for the complex, and borrowed $2.08 million from Rapid Funding on a mortgage loan payable in one year. Mr. Rice later sold his interest in the property to Mr.

Niebauer but remained jointly and severally liable for the debt. Mr. Niebauer defaulted on the loan, and Rapid Funding filed for foreclosure. Rapid Funding took out a $3 million policy with James River and then purchased Amsterdam Gardens at the sheriff's foreclosure sale for $1.8 million.

On January 24, 2007 an arson fire destroyed the North Building. Upon order from the City of Wyoming, Rapid Funding demolished both the North and South Building. Rapid Funding submitted an insurance claim for the full $3 million and submitted two "proofs of loss" indicating that the "actual cash value" of the North Building before the fire was $4.489 million. James River denied the claim after determining that the building's pre-fire value was less than zero.

On May 31, 2007 James River initiated this action seeking a declaratory judgment that: (1) the burned building had a pre-fire actual cash value of zero or less than zero, and (2) Rapid Funding's insurable interest in the burned building was equitably limited. Rapid Funding filed counterclaims for breach of insurance contract and breach of the covenant of good faith and fair dealing. The case went to trial in Judge Christine Arguello's court on July 8, 2010. At the close of a six day trial the jury found James River liable for breach of insurance contract and bad faith breach of an insurance contract. The jury awarded Rapid Funding $3 million in compensatory damages, and $2.35 million in punitive damages.

James River appealed the damages verdict on the ground that the district court should have excluded the testimony of Andrew Miller, Rapid Funding's principal, under Fed. R. Evid. 702. Prior to the trial, James River filed a motion in limine seeking to exclude Andrew Miller's testimony on the value of the North Building. The district court held an evidentiary hearing on James River's motion and determined that Mr. Miller was qualified to offer lay opinion

testimony on the value of the property based on his experience in real estate.  At trial, James River renewed its objection when Mr. Miller testified.  The Tenth Circuit panel described the content of Mr. Miller's testimony as follows:

> Mr. Miller testified to the $7.145 million replacement cost estimate from the Anderson Group, to his 40% depreciation figure, and his actual cash value estimate of $4.489 million.  The court instructed the jury that Mr. Miller was testifying as a lay witness, not as an expert. Mr. Miller also testified that Rapid Funding purchased the complex at the sheriff's foreclosure sale for $1.8 million and that, when Rapid Funding put the complex up for sale, it received offers between $1.0 and $1.2 million.  Mr. Rice testified to buying the complex for $2.6 million, and Mr. Miller testified that Rapid Funding had contracted to sell the complex back to Mr. Rice for $1.8 million and forgive his $650,000 debt to Rapid Funding.

*James River Ins. Co. v. Rapid Funding, LLC,* 658 F.3d 1207, 1211-12 (10th Cir. 2011).

The court found that Mr. Miller's valuation testimony was expert testimony based on technical or specialized knowledge and should not have been admitted under Rule 701.  *Id.* at 1214.  Rule 701 "does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness."  *Ibid.* (citing *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)).  Further, the court found that Mr. Miller's testimony did not qualify as a lay opinion under Rule 701.  It reasoned that Mr. Miller "had to do more than calculate depreciation for a 39-year old building.  He also needed to account for the deterioration and neglect that caused the North Building to be condemned.  Accurately accounting for the interaction between depreciation and damage requires professional experience and is beyond the scope of lay opinion testimony." *Id.* at 1215.  Without Mr. Miller's testimony, the court held that there was insufficient evidence to sustain the jury's damages verdict:

> Without Mr. Miller's valuation testimony, the jury's damages verdict must be overturned.  Because the remaining evidence did not lend itself to a reliable estimate of the pre-fire value of the North Building, the appropriate remedy is not

>to reduce the damages through remittitur, but to have a new trial so the parties can introduce reliable valuation evidence and a jury can reach an accurate damage verdict. Accordingly, we remand this case for a new trial limited to the issue of damages.

*Id.* at 1221-22.

On October 25, 2011 James River filed a motion in limine requesting an order limiting the scope of retrial to a determination of the value of the North Building [#292]. The issue was briefed and argued before, as indicated above, Judge Arguello entered an order of recusal.

## CONCLUSIONS

As an initial matter, it is worth noting that both parties are in agreement that the evidence in the second trial will not be limited to that which was developed in the first. The Court agrees. However, the parties vehemently disagree about the scope of the trial on remand. The parties briefing on the scope of retrial presents two issues: (1) To what extent the retrial will encompass punitive damages; and (2) Whether, in connection with the Court's ruling on the punitive damages issue, the Court should exclude certain pieces of evidence.

### Punitive Damages

In its motion, James River argues that the sole issue to be retried is the amount of compensatory damages for breach of contract, or simply, the value of the North Building after the fire. In contrast, Rapid Funding interprets the Tenth Circuit's decision to encompass all damages, including punitive damages. James River's and Rapid Funding's disagreement turns upon their respective interpretations of several issues: (1) The Tenth Circuit's opinion; (2) Rapid Funding's rights under the Seventh Amendment; (3) Colorado's damages cap for punitive damages; and (4) the admissibility of evidence

4

under Federal Rules of Evidence 401 and 403. Each issue will be addressed in turn below.

The Tenth Circuit ordered: "The damages verdict is REVERSED and the case is REMANDED for a new trial to determine damages." *James River,* 658 F.3d at 1222. The crux of the disagreement is what the Tenth Circuit meant by its use of the term "damages." James River's view is that the Tenth Circuit directed this Court to re-try evidence regarding compensatory damages only, i.e., the value of the North building. Rapid Funding argues that "damages" refers to all damages – punitive as a well as compensatory.

The Tenth Circuit's opinion primarily concerned the testimony of Mr. Miller. Mr. Miller's testimony centered on the value of the North Building and was the basis for James River's appeal. The court determined that the valuation testimony was erroneously admitted. The remedy was "to have a new trial so the parties can introduce reliable valuation evidence and a jury can reach an accurate damages verdict. Accordingly, we remand this case for a new trial limited to the issue of damages." *Id.* at 1221-22.

The opinion did not address punitive damages. However, James River, both in its brief and at oral argument, conceded liability for the full amount of punitive damages that can be awarded under Colorado law. Accordingly, there is no genuine dispute regarding either Rapid Funding's entitlement to punitive damages or amount of punitive damages in the event that it obtains a verdict on compensatory damages.

Rapid Funding argues that limiting the scope of the retrial to valuation evidence will violate its Seventh Amendment rights. The Seventh Amendment to the United States

Constitution states: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of common law." The Seventh Amendment "includes the right to a jury determination regarding the amount of punitive damages." *Jones v. United Parcel Service, Inc.*, 674 F.3d 1187, 1206 (10th Cir. 2012).

In *Jones*, the parties disputed both the amount of punitive damages and whether the plaintiff was entitled to any punitive damages. Here, as indicated, there is no dispute as to entitlement or amount. "The Seventh Amendment does not entitle parties to litigate before a jury when there are no factual issues for a jury to resolve." *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 676 (7th Cir. 2002). For the same reason that granting summary judgment against a party does not violate that party's Seventh Amendment jury-trial right, accepting a party's concession that it is liable for the maximum amount of punitive damages does not violate the opposing party's Seventh Amendment jury-trial right. *See Plaisance v. Phelps*, 845 F.2d 107 (5th Cir. 1988) (finding that the plaintiff did not have an absolute right to a jury trial where there was no genuine issue of material fact, since the function of the jury is to try disputed material facts).

The facts presented in *Belk v. Dzierzanowski*, 571 F.Supp.2d 1346 (N.D. Ga. 2008) are strikingly similar to those presented here. In that case, which concerned a wrongful death action, the defendant offered to confess judgment for punitive damages in the amount of $250,000, which the court noted was the statutory cap for punitive damages in Georgia. The plaintiff opposed the confession, arguing that "only a jury can determine the amount of punitive damage award." *Id.* at 1347. The court rejected the

plaintiff's argument, stating that "the statute's $250,000 cap on punitive damages renders jury consideration unnecessary in a case where the defendant concedes liability for the maximum possible punitive damage award." *Id.* I can understand that presenting evidence concerning punitive damages might have a tactical advantage. However, because there is no disputed issue of fact for the jury to resolve, and the case is limited to valuation evidence, there is no Seventh Amendment right to have the jury consider punitive damages.

Rapid Funding also argues that even if James Rivers has conceded the maximum statutory amount of punitive damages, the jury must still be permitted to hear evidence of punitive damages because limiting the scope of trial will prevent Rapid Funding from arguing that the statutory cap is unconstitutional.

Under Colo. Rev. Stat. § 13-21-102(1)(a), the jury may award reasonable exemplary damages when the wrong committed was attended by circumstances of willful and wanton conduct. However, "the amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party." Colo. Rev. Stat. § 13-32-102(1)(a). Notwithstanding this limitation, the court "may increase any award of exemplary damages, to a sum not to exceed three time the amount of actual damages," if certain circumstances are present. Colo. Rev. Stat. § 13-21-102(3).

Following the first trial Rapid Funding requested that the court increase the jury's award of $2.35 million in punitive damages to over $7 million [#216]. The Court denied that request, finding that there was no evidence that James River had acted "willfully and wantonly" during the pendency of the case. [#255] at 9. This is now the law of the case.

7

Accordingly, the most Rapid Funding can possibly receive in punitive damages is "an amount equal to the amount of actual damages awarded." Colo. Rev. Stat. § 13-21-102(1)(a). As James River has confessed liability to such an amount, the Court can determine it – on a 1-to-1 ratio – as a matter of law once the jury determines actual damages. An award of punitive damages equal to actual damages, in compliance with the Colorado statutes, does not prohibit a constitutional challenge, nor has Rapid Funding cited any authority for that proposition.

James River argues that any evidence of their bad faith insurance breach is irrelevant to the question of the North Building's pre-fire value. Under Federal Rule of Evidence 401, "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rapid Funding has failed to articulate how evidence regarding how James River handled the insurance claim demonstrates anything about the value of the property itself. As Judge Arguello stated during oral argument on this issue, such evidence may be relevant to any decision by this Court on whether to treble damages, but it is not relevant to the initial determination of the value of the North Building.

Further, even if the bad faith insurance breach evidence were relevant, the Court would elect to exclude it under Federal Rule of Evidence 403. Rule 403 states: "The court may exclude evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, any probative value of James River's bad faith insurance breach would be substantially outweighed by a danger of unfair prejudice. Evidence of James River's bad faith

handling of the claim runs the risk of inflaming the passions of the jury or of misleading the jury, to decide on an inflated value of the North Building simply to punish James River for its bad faith. Permitting the parties to re-litigate the issues in the bad faith claim would also waste substantial time in a case that has now been further delayed.

Accordingly, the Court concludes that the only issue to be retried is compensatory damages for James River's breach of contract, which is a function of reliable valuation evidence regarding the North Building on the date of the fire.

Exclusion of Evidence

In its motion, James River also asks that eight specific items of evidence be excluded. Each item will be addressed in turn.

1. Claim Handling and Other Evidence of Bad Faith.

As discussed above, such evidence is irrelevant, and thus admissible, given the scope of the retrial.

2. The Policy Limit of $3 Million.

James Rivers argues that the $3 million policy limit is not relevant to the value of the North Building. The Court disagrees with James River's assertion that an insurance policy limit provides no evidence of the value of the insured property. Therefore, at this time the Court will not exclude evidence of the $3 million policy limit.

3. The Policy Itself.

James River also contends that the policy itself is irrelevant to the valuation question. Further, James River argues that the policy is a complex document with numerous terms of art and is likely to confuse the jury. The policy is a complex document, but the Court has faith that the jury is capable of carefully reading and

understanding the insurance policy. The parties may submit jury instructions to help clarify any confusing or potentially misleading terms of art. The policy itself will provide necessary context for the decision the jury will be making, and therefore will not be excluded.

4. The Fact that James River Rejected Most of Rapid Funding's Claim.

As discussed above, such evidence is irrelevant and thus inadmissible, given the scope of the retrial.

5. Information about the First Trial.

James River argues that information regarding the first jury's verdict s is irrelevant and should not be provided to the jury. The Court will inform the new jury that a previous trial occurred, and liability was determined in Rapid Funding's favor. The jury will not, however, be informed of (1) the first jury's specific liability findings, (2) the first jury's decision on punitive damages, or (3) the amount of damages awarded. Such evidence is irrelevant, and even if relevant, would be inadmissible under Rule 403.

6. Rapid Funding's Proofs of Loss.

The Tenth Circuit has already deemed Rapid Funding's 'proofs of loss' to be irrelevant. "[A] rational jury could not rely on the Proofs of Loss to establish damages. The Proofs of Loss were allegations of what Rapid Funding believed it could prove the North Building was worth." [#280] at 26. All the Proofs of Loss were meant to do was "provide James River with the opportunity to investigate the value of Rapid Funding's claim and then arrive at an accurate estimate of its value." *Id.* at 27.

7. Punitive Damages Calculation.

James River contends that the first jury's award of punitive damages and the information that any compensatory award will be matched by an equal award of punitive damages is irrelevant and unfairly prejudicial. For the reasons discussed in detail above, the Court agrees with James River.

8. Testimony of Matt Baker.

Matt Baker was an employee of James River. Following the jury's verdict, Mr. Baker sent a congratulatory email to Rapid Funding's counsel and said that James River's claims manager was "immoral and controlling," that "they've steered this thing," and that "I wish I could have said more." As Judge Arguello stated during the October 4, 2011 status conference, the email is ambiguous and does not indicate that there was any perjury. [#291]. Matt Baker's testimony would go to James River's handling of the claim which is irrelevant to the value of the North Building, and, thus, inadmissible.

**Order**

Accordingly, James River's Motion in Limine to Limit Scope of Retrial [#292] is GRANTED in part, and DENIED in part, consistent with this order.

The parties are directed to contact chambers jointly to set a trial date.

DATED this 29th day of May, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge